# No. 24-3585

Consolidated with
Nos. 24-3444 (L), 24-3450, 24-3451, 24-3527, 24-3619, 24-3621

## In the United States Court of Appeals
## for the Eighth Circuit

Rhonda Burnett, *et al.*,
*Plaintiffs-Appellees*,

v.

National Association of Realtors, *et al.*,
*Defendants-Appellees*,

v.

Brown Harris Stevens, *et al.*,
*Intervenors-Appellees*,

v.

Tanya Monestier,
*Objector-Intervenor-Appellant*.

———————————

Appeal from the United States District Court
for the Western District of Missouri,
Case No. 4:19-cv-00332 (SRB)
Hon. Stephen R. Bough

**MOTION TO STRIKE PORTIONS OF *BURNETT* APPELLEES' BRIEF FOR FAILURE TO COMPLY WITH COURT'S ORDER**

Tanya Monestier
101 Charleston Ave
Kenmore, NY, 14217
Phone: (401) 644-2383
Email: tanyam@buffalo.edu
*Pro Se*
*Objector-Appellant*

Appellant Monestier requests that this Court strike all of Plaintiffs' brief on Article III standing (section V.A.) and not permit Plaintiffs to refile that portion of the brief. In the alternative, Monestier moves to strike any new language and arguments that did not appear in Plaintiffs' original brief.

───────────

1. On September 10, 2025, this Court ordered Plaintiffs to "resubmit their briefs removing the information subject to" the joint motion to supplement and the motion to strike.

2. The full text of the order is replicated below:

> JUDGE ORDER: The joint motion to supplement the record [5539528-2] filed by appellees National Association of Realtors, Brown Harris Stevens and The Agency is denied. The motions to strike the brief submitted by appellees Burnett, et al. [5540524-2] & [5540150-3] filed in 24-3527 & 24-3585 are granted. Appellees National Association of Realtors, Brown Harris Stevens, The Agency, Rhonda Burnett, Jerod Breit, Jeremy Keel, Frances Harvey and Hollee Ellis have until September 15, 2025 *to resubmit their briefs removing the information subject to appellees' joint motion to supplement and appellants' motions to strike.* Adp Feb 2025 [5556146] [24-3444, 24-3450, 24-3451, 24-3527, 24-3585, 24-3619, 24-3621] (HAG) (emphasis added).

Appellate Case 24-3444, Entry ID: 55561463 dated September 10, 2025.

3. This Court's order required Plaintiffs to "resubmit" briefs by "removing information" pertaining to *Moehrl. Id.* The Court's order was not an invitation to rethink, rewrite and add new arguments. It was a narrow remedial directive: "remov[e]" the material subject to the motion to strike. In other words, Plaintiffs were told to refile the same brief *minus* the improper references. Plaintiffs defied this Court's order by using the order as an opportunity to change their standing arguments when their initial arguments were rejected by the Court.

4. Plaintiffs seem to believe that the rules do not apply to them. First, they did not file a motion to supplement the record, insisting it was their right to introduce evidence from cases outside the record.[1] Second, Plaintiffs played fast and loose with authority concerning judicial notice and motions to supplement.[2] And now, Plaintiffs are using Monestier's

---

[1] Plaintiff-Appellees' Opposition to Interested Party Tanya Monestier's Motion to Strike, at 3 ("First, Plaintiffs' brief simply alerts the Court to the *Moehrl* decision's existence and contents. Such action requires neither judicial notice nor supplementation of the record.").
[2] *Id.* ("Second, Eighth Circuit precedent allows the Court to take judicial notice of 'filings of public record' and 'parties' assertions therein,' which includes the *Moehrl* decision and declarations.").

motion to strike and the Court's order as a "do over." This Court should not countenance this behavior.

5. Below is a comparison of the original filing and the revised filing. Additions or changes are indicated by bold and underline (deletions not tracked, and footnotes omitted for simplicity).

**ORIGINAL FILING**

> IV. THE DISTRICT COURT PROPERLY OVERRULED THE MONESTIER OBJECTION.
>
> The Monestier Objection raises three additional issues: (1) Plaintiffs' standing to obtain injunctive relief; (2) the adequacy of the Settlements' injunctive relief; and (3) the reasonableness of the District Court's award of attorneys' fees. None of her objections have merit.
>
> A. Plaintiffs Have Standing to Obtain Injunctive Relief.
>
> As discussed, the Settlements eliminate Defendants' challenged practices and will thereby save the Class billions by lowering commissions for future home sales. Monestier objects to this result, arguing the Class Representatives lack standing to seek it. Monestier Br. 22. That's not correct. Although no one (including Monestier) questioned standing below, the issue was fully litigated in Moehrl. And Judge Wood not only found the class representatives have standing to seek injunctive relief, but even appointed them to lead a Rule 23(b)(2) injunctive relief class. Moehrl v. Nat'l Ass'n of Realtors, No. 19-cv-01610, 2023 WL 2683199, at *22 (N.D. Ill. March 29, 2023).
>
> Victims of illegal conduct have standing to seek injunctive relief so long as they suffer from "continuing, present adverse effects," O'Shea v. Littleton, 414 U.S. 488, 496 (1974), or likely "will again be wronged in a similar way."

3

City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Plaintiffs satisfy these standards because they are not merely home sellers, but also homeowners. Like most home sellers, they bought a different home with their home sale proceeds because they needed somewhere to live. They each suffer from "present adverse effects" of Defendants' conspiracy because they cannot sell their current homes without facing the challenged practices. And they will "be wronged in a similar way" when they sell their homes in the future. Nothing more is needed to establish standing for injunctive relief.

All this was made clear in Moehrl. Class representatives Moehrl, Cole, Darnell, Ramey, Umpa, and Ruh each submitted declarations "expressly indicat[ing] that they are likely to sell homes on a Covered MLS again in the near future." Moehrl, 2023 WL 2683199, at *22.7 Based on this uncontroverted evidence, the Moehrl Court: (1) found that Moehrl, Cole, Darnell, Ramey, Umpa, and Ruh "have standing to represent [an] Injunctive Relief Class," and (2) certified such a class under Fed. R. Civ. P. 23(b)(2) with those individuals as the class representatives. Id. at *22, 23.

When the District Court certified and approved the Settlement Class here, it included Moehrl, Cole, Darnell, Ramey, Umpa, and Ruh as Plaintiffs and Class Representatives. March.App.472; R.Doc.1460, at ¶6; Doyle.App.6–7; R.Doc.1622, at ¶¶12–13. That inclusion lays to rest any standing concerns – as the Moehrl Court found, all six have standing to represent a settlement class receiving injunctive relief. And although the Burnett Class Representatives also own homes and intend to sell them on a covered MLS, their separate standing is irrelevant because only a single plaintiff need demonstrate standing to seek injunctive relief. Clinton v. City of New York, 524 U.S. 417, 431 n.19 (1998) (where other parties shown to have standing "we need not consider whether the appellee unions also have standing to sue."); Nat'l Wildlife Fed'n. v. Agric. Stabilization & Conservation Serv., 955 F.2d 1199, 1203 (8th Cir. 1992) (same).

4

Monestier addresses none of this. Instead, she relies largely on Davis v. Hanna Holdings, Inc., 771 F.Supp.3d 552, 567–68 (E.D. Penn. 2025), in which the court found a group of home buyers failed to establish standing to seek injunctive relief. But future harm is much more speculative for home buyers than for current homeowners. After all, almost every homeowner will eventually sell (and thereby suffer harm caused by the challenged practices). Many people go their entire lives without buying any home, however, and buying one home doesn't imply any future purchases. At any rate, the Class Representatives here submitted detailed declarations establishing the facts found lacking in Hanna.

Monestier also argues that Plaintiffs lack standing for injunctive relief because they now "have knowledge" of the NAR conspiracy. Monestier Br. 26. In Monestier's view, any class member who lists their home on a NAR MLS suffers only "self-inflicted harm" that is "largely of [their] own making." Id. at 27–28. But the whole point of this case is that home sellers can't avoid NAR's challenged practices even if they want to. The practices "eliminate the ability to negotiate commissions" by "requir[ing] anyone listing a property on an MLS to offer compensation to buyers' brokers." PA.App.111–12; R.Doc.956, at 25, 26. Owners trying to sell their home without using an MLS suffer from "steering," in which agents refuse to show their homes to prospective buyers. Id. Home sellers therefore "have no realistic choice" but to list on an MLS, and "[a]ll attempts to break the link [with] MLSs have been unsuccessful." Id. The challenged rules were publicly known for decades before this case was filed, yet home sellers could not avoid them. Absent the Settlements, no class member can change this system (or avoid being harmed by it); each therefore suffers a cognizable injury conferring standing to seek a remedy.

**REVISED FILING WITH NEW ARGUMENTS**

V. THE DISTRICT COURT PROPERLY OVERRULED THE MONESTIER OBJECTION.

5

The Monestier Objection raises three additional issues: (1) Plaintiffs' standing to obtain **practice changes [sic.]**; (2) the adequacy of the Settlements' **practice changes**; and (3) the reasonableness of the District Court's award of attorneys' fees. None of her objections have merit.

A. Plaintiffs Have Standing to **Obtain Practice Changes.**

As discussed, the Settlements eliminate Defendants' challenged practices and will thereby save the Class billions by lowering commissions for future home sales. Monestier objects to this result, arguing the Class Representatives lack standing. Monestier Br. 22. That's not correct. Although no one (including Monestier) questioned standing below, **the record makes plain that Defendants' challenged practices "require every seller to offer compensation" to a buyer broker. Burnett.App.116; R.Doc.741, at 28. The harm that flows from that requirement is "pronounced and unavoidable," and it will persist until remedied. Burnett.App.47; R.Doc.637-4, at ¶13.**

Victims of illegal conduct may seek injunctive relief when they suffer "continuing, present adverse effects," O'Shea v. Littleton, 414 U.S. 488, 496 (1974), or likely "will again be wronged in a similar way." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). **The standard is not certainty, but whether there is a "substantial risk that the harm will occur" rather than a mere "possibility" of injury. City of Kennett, Missouri v. Env't Protection Agency, 887 F.3d 424, 431 (8th Cir. 2018). "Past wrongs" provide direct evidence of such risk. O'Shea v. Littleton, 414 U.S. 488, 496 (1974). Here, there is no serious dispute. Plaintiffs have shown "actual repeated incidents" of harm resulting from Defendants' "concrete and consistently implemented policies," and the possibility of recurring harm has "cease[d] to be speculative." Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 826 (9th Cir. 2020); In re Navy Chaplaincy, 697 F.2d 1171, 1176–77 (D.C. Cir. 2012).**

Because Plaintiffs are not just home sellers but also homeowners, they will inevitably sell their current homes. Burnett.App.3; R.Doc. 553-6, at 30:14–21; Burnett.App.221; R.Doc. 1324, at 271:7–11; Burnett.App.222; R.Doc.1324, at 337:5–18. As Monestier herself concedes, "[h]ome sales occur, on average, once every twelve years." Monestier Br. 23.7 And "Defendants and their co conspirators collectively have 100% market share in the relevant antitrust markets." Burnett.App.143; R.Doc.922-3, at ¶27. Absent the practice changes, when Plaintiffs sell again they would have no real alternative but to list on an MLS and pay the inflated commissions dictated by the challenged practices. Burnett.App.226–27; R.Doc.1325, at 530:17–531:1; Burnett.App.231–32; R.Doc.1326, at 722:12–723:15. That harm is concrete, particularized, and certain – more than sufficient to establish standing.

Monestier's argument also fails because the practice changes arise from a private settlement contract, not traditional judicially ordered injunctive relief. A "class action agreement" is merely "a private contract" the court approves without "establish[ing] a judicial 'imprimatur'" over "the terms of the agreement." Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003). And it is well established that settlements may include relief the court itself would have no jurisdiction to award. See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 385 (1996) (state courts may approve settlements that release claims subject to exclusive federal court jurisdiction). Because the District Court undisputedly had "jurisdiction over the dispute," it had authority to "approve [the] proposed class settlement" without raising Article III concerns. Frank v. Gaos, 586 U.S. 485, 492 (2019).

Monestier addresses none of this. Instead, she relies largely on Davis v. Hanna Holdings, Inc., 771

7

**F.Supp.3d 552, 567–68 (E.D. Penn. 2025), where the court denied standing to a group of home buyers. But the difference is obvious: future harm is more speculative for buyers than sellers.** Every homeowner will eventually sell. Many people, by contrast, go their entire lives without buying any home, and buying one home doesn't imply any future purchases.

Monestier further argues that Plaintiffs lack standing because any class member who lists their home on a NAR MLS suffers only "self inflicted harm" that is "largely of [their] own making." Monestier Br. 27 28. **But home sellers can't avoid NAR's challenged practices even if they want to.** The practices "eliminate the ability to negotiate commissions" by "requir[ing] anyone listing a property on an MLS to offer compensation to buyers' brokers." Burnett.App.204–05; R.Doc.956, at 25, 26. Owners trying to sell their home without using an MLS suffer from "steering," where agents refuse to show their homes to prospective buyers. Id. Home sellers therefore "have no realistic choice" but to list on an MLS, and "[a]ll attempts to break the link [with] MLSs have been unsuccessful." Id. Absent the Settlements, no class member can change this system (or avoid being harmed by it); each therefore suffers a cognizable injury conferring standing to seek a remedy.

6. Monestier has attached a pdf "comparison" tool to electronically flag the changes Plaintiffs made to their brief. According to that tool, there were 212 Replacements; 10 Insertions; and 5 Deletions. *See* Attachment.

7. Plaintiffs deleted references to the following cases:

- Clinton v. City of New York, 524 U.S. 417, 431 n.19 (1998)
- Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv., 955 F.2d 1199, 1203 (8th Cir. 1992)

And they added eight new cases:

- City of Kennett, Mo. v. EPA, 887 F.3d 424, 431 (8th Cir. 2018)
- Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 826 (9th Cir. 2020)
- In re Navy Chaplaincy, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012)
- Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003)
- Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 385 (1996);
- Frank v. Gaos, 586 U.S. 485, 492 (2019)
- Ctr. for Biological Diversity v. Strommen, 114 F.4th 939, 943 n.3 (8th Cir. 2024)
- Worth v. Jacobson, 108 F.4th 677, 686 (8th Cir. 2024)

8. The alterations to the brief are substantial and completely change the argument Plaintiffs made the first time around. Specifically, in their original brief, Plaintiffs conceded that Article III standing was required. *See* Plaintiffs' Original Br., at 40 ("th[e] separate standing [of the named plaintiffs in *Burnett*] is irrelevant because only a single plaintiff need demonstrate standing to seek injunctive relief."). Plaintiffs' opposition to Monestier's motion to strike also concedes that Article III standing is required. *See e.g.* Plaintiff-Appellees' Opposition to Interested Party Tanya Monestier's Motion to Strike, at 2-3 (arguing that the *Moehrl* declarations "lay[ ] to rest any standing concerns."); at 3 (asking

9

to "supplement[ ] the record with the *Moehrl* declarations that show standing."); at 6 ("The *Moehrl* decision establishes the class representatives' standing"); at 10 ("the declarations conclusively establish the class representatives' standing to seek injunctive relief."). Now, suddenly, Plaintiffs attempt to resile from this critical concession. They argue, as can best be gleaned from the submission, that Article III standing is not required:

> Monestier's argument also fails because the practice changes arise from a private settlement contract, not traditional judicially ordered injunctive relief. A "class action agreement" is merely "a private contract" the court approves without "establish[ing] a judicial 'imprimatur'" over "the terms of the agreement." Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003). And it is well established that settlements may include relief the court itself would have no jurisdiction to award. See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 385 (1996) (state courts may approve settlements that release claims subject to exclusive federal court jurisdiction). Because the District Court undisputedly had "jurisdiction over the dispute," it had authority to "approve [the] proposed class settlement" without raising Article III concerns. Frank v. Gaos, 586 U.S. 485, 492 (2019).

Plaintiffs wishy-washy "you need standing, but maybe you don't" argument must be rejected. The time for this argument was when the brief was originally due, July 21, 2025. This Court should not permit

Plaintiffs an extra two months to craft alternative arguments when the primary ones they have advanced have been rejected.

9. Plaintiffs also ask this Court to allow them to file unspecified supplementary materials to establish standing, something that they did not include in the original brief.[3] The same argument applies. Plaintiffs are not permitted to take arguments out for a test drive and then advance new arguments when notified their brief is deficient.

10. The tone of Plaintiffs' argument has also shifted to accommodate their newfound arguments. For instance, the expression "injunctive relief" has now been changed to "practice changes." This shift in language is clearly designed to bolster Plaintiffs' fallback argument that Article III standing is suddenly not required to approve what they claim is one of the most revolutionary and groundbreaking antitrust settlements in history.

---

[3] There, they asked this Court to allow them to supplement the record with the *Moehrl* declarations. Now they ask for leave to supplement with some unspecified evidence of standing, which they claim may not be required to approve this settlement. Monestier intends to separately oppose Plaintiffs' new request to supplement if the Court permits this new filing to be docketed.

11. Plaintiffs do not get a "trial run" of an argument via an impermissibly filed brief, and then scrap that argument in favor of a different one when the first argument does not work out. Plaintiffs, in other words, do not get to use the resubmission process as a way of honing their legal arguments with the audience that will ultimately decide their case—seeing what sticks and what doesn't.

12. Eighth Circuit rules permit a party to correct a deficiency, not to buy an additional month's worth of time to come up with new arguments. The Internal Operating Procedures of the Eighth Circuit provide:

> Upon receipt of the electronic version of the brief, the clerk's office will review it (and the submitted addendum) for compliance with the rules and notify counsel if any defects are noted. Counsel have five days from receipt of a defect notice to submit a revised electronic version of the brief; failure to submit a corrected version of the brief may result in the issuance of an order to show cause or an order barring the filing of the brief.

*See* CTA8 IOP. Notably, the rules permit counsel to submit a "revised" version of the brief—meaning a brief that corrects the deficiencies noted.[4]

---

[4] The fact that the rules give counsel only five days to correct the deficiency necessarily means that the rules are not intended to permit for a re-write.

It does not permit counsel to submit a "new" version of the brief. Here, it was not the clerk that identified the deficiency; it was the Court itself. The Court directed Plaintiffs to refile based on the "defect" presented, i.e., the reference to material outside the record. Plaintiffs responded not by submitting a "revised" version of the brief, but by submitting a new brief.

13. Understandably, this issue does not come up very often. This is because litigants are generally not brazen enough to openly change their arguments after they don't work out. But in cases where courts have considered the issue, they have not permitted substantive changes. For instance, in *Parris v. Ballantine,* 330 So. 3d 444, 448 (Ala. 2020), the court refused to accept a corrected brief that contained numerous substantive changes:

> After reviewing the two versions, we note that there are multiple changes in the "corrected" brief, including the addition of legal authorities not cited in the original brief. Based on the large number of changes, and because the Alabama Rules of Appellate Procedure do not contemplate accepting an appellee's brief after the appellant has submitted a reply brief, we have considered only the siblings' originally filed brief.

*See also Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *4 (Tex. App. May 6, 2021) ("Moreover, Appellant's amended brief lodged new accusations in an attempt to expand the issues raised in his

13

original brief—despite our express caution not to use his amended brief for this purpose without requesting leave to do so."); *Faour v. Koenig*, 662 S.W.2d 751, 751 (Tex. App. 1983) ("Appellant filed an amended brief October 3, 1983, which added new points of error without leave of the court. This does not meet the requirements of [the rules]. Appellant's original brief is the only one considered by this court.").

14. This Court considered a similar issue in *F.T.C. v. Neiswonger*, 580 F.3d 769 (8th Cir. 2009). In that case, the appellant sought to make new arguments in his reply brief that were not contained in his original brief. This Court struck the portion of the reply brief containing the new arguments. This Court stated:

> In his reply brief, Neiswonger [advances new arguments]. These arguments were not made in Neiswonger's opening brief. The FTC filed a motion to strike this portion of Neiswonger's reply brief. "Claims not raised in an opening brief are deemed waived," *Jenkins v. Winter,* 540 F.3d 742, 751 (8th Cir.2008) (citations omitted), and we do "not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief,' " *id.* (quoting *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.,* 408 F.3d 410, 421–22 n. 5 (8th Cir.2005)). Because Neiswonger provided no explanation for his failure to raise these arguments in his opening brief, the arguments are waived and we grant the FTC's motion to strike.

*Id.,* at 775. Just as an appellant cannot raise a new argument in a reply brief, an appellee cannot raise a new (and inconsistent) argument after its brief has already been submitted.

15. It is obvious why, as a policy matter, this Court cannot permit Plaintiffs to completely recraft their Article III standing argument under the guise of correcting a brief deficiency. If this were permitted, litigants would shoot for the stars, and then fall back on their secondary arguments. This undermines the integrity of appellate procedure and encourages parties to treat briefing deadlines as provisional rather than final.

16. Moreover, if this Court were to permit Plaintiffs to introduce new arguments in response to a notice of brief deficiency, there would be no limiting principle. Here, Plaintiffs opted to completely change their Article III standing arguments. But if that were allowed, what would stop them from reworking entire sections of the brief—or even rewriting it from top to bottom—whenever a deficiency was identified?

17. Plaintiffs did not merely remove references to *Moehrl* as the Court directed. Instead, they recast the entire structure and substance of their Article III argument, introducing new authorities, adding factual

assertions that were not previously cited, added cases, deleted cases, and introduced new legal arguments. These are not inexperienced or pro se litigants who do not understand the rules or the appellate process. These are among the most experienced lawyers in the country, and this gamesmanship should not be permitted.

## CONCLUSION

18. Monestier requests that this Court strike section V.A. of Plaintiffs' revised brief and not permit any refiling on the issue of Article III standing. This Court's order was not ambiguous—it directed Plaintiffs to "remove" references to *Moehrl*. That is it. Plaintiffs instead seized on the Court's order and the extra time to gain a strategic advantage. Accordingly, the requested relief is appropriate.

19. If this Court disagrees with the suggested remedy, then Monestier requests, in the alternative, that this Court accept Plaintiffs' original filing with refences to *Moehrl* removed.

Dated: Sept 16, 2025   Respectfully submitted,

*/s/ Tanya Monestier*

Tanya Monestier
*Objector-Appellant*
101 Charleston Ave
Kenmore, NY
14217
Phone: (401) 644-2383
Email: tanyam@buffalo.edu

## CERTIFICATION OF COMPLIANCE

This motion complies with Fed. R. App. P. 27(d)(2)(A) because the word count is 3,867 words. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in 14-point Century Schoolbook font. This motion complies with 8th Cir. R. 28A(h) because the PDF file has been scanned for viruses by Microsoft Defender Antivirus and is said to be virus-free by that program.

Dated: Sept. 16, 2025              Respectfully submitted,

                                   */s/ Tanya Monestier*

                                   Tanya Monestier
                                   *Objector-Appellant*
                                   101 Charleston Ave
                                   Kenmore, NY
                                   14217
                                   Phone: (401) 644-2383
                                   Email: tanyam@buffalo.edu

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: Sept. 16, 2025

Respectfully submitted,

*/s/ Tanya Monestier*

Tanya Monestier
*Objector-Appellant*
101 Charleston Ave
Kenmore, NY
14217
Phone: (401) 644-2383
Email: tanyam@buffalo.edu